# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NAUTILUS INSURANCE COMPANY** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **MOTEL MANAGEMENT SERVICES, INC.,** | : | |
| d/b/a Neshaminy Inn and E.B. | : | **NO. 17-4491** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                       **May 24, 2018**

Nautilus Insurance Company seeks a declaration that it has no duty to defend and indemnify its insured, Motel Management Services (MMS), in a pending state court action alleging MMS was negligent in failing to prevent human sex trafficking from occurring on its property.[1] Moving for judgment on the pleadings, Nautilus argues that coverage is excluded by the assault and battery exclusion because the claim in the underlying action is for assault. It also argues that as a matter of public policy, it has no duty to defend or indemnify an insured for allegations of human trafficking.

After reviewing the policy and the plaintiff's complaint in the underlying action, we conclude that because the claims are for the negligent failure to prevent an assault or battery, they are not covered. Therefore, we shall grant Nautilus's motion and declare that it has no duty to defend and indemnify MMS.

### The Underlying Action

Beginning in 2014, E.B., a minor female, alleges that she was "recruited, enticed, solicited, harbored and/or transported to engage in commercial sex acts" at a motel

---

[1] This action is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* Subject matter jurisdiction is based upon the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332.

owned and operated by MMS.[2] Traffickers advertised online that E.B.'s services were available at the motel.[3] She alleges the traffickers took her to the motel and checked into a room where she was forced to engage in commercial sex acts.[4] The motel employees consistently directed E.B. and the traffickers to the same room towards the back of the property each time.[5] The room was always paid for in cash from the money E.B. earned from engaging in commercial sex activity.[6]

E.B. alleges she was "visibly treated in an aggressive manner" by her traffickers.[7] Indeed, she claims she was held at gunpoint and threatened to engage in sex acts not only with her paying customers, but also with her traffickers.[8] And while she was engaged in forced sexual activity, men and other minors entered and exited the room.[9]

E.B. claims that MMS facilitated her exploitation by knowingly permitting the traffickers' activity on its property.[10] E.B. also contends that MMS failed to intervene or stop human sex trafficking, and to report the traffickers' illegal conduct to the

---

[2] Compl., Ex. A, Compl., *E.B. v. Motel 6 Operating L.P. et al.*, Case No. 170500487 (Phila. Ct. C.P. May 2017) (Doc. No. 1) ("E.B. Compl.") at ECF 19–36, ¶ 27. Conduct alleged in the underlying complaint occurred at two motels, the Motel 6 Philadelphia Airport and the Neshaminy Inn Motel. For purposes of this action, we consider only the conduct alleged at the Neshaminy Inn Motel, which MMS "owned, operated, and/or managed." *Id.* ¶¶ 15–16.

[3] E.B. Compl. ¶¶ 32–33.

[4] *Id.* ¶¶ 37–39.

[5] *Id.*

[6] *Id.* ¶ 43.

[7] *Id.* ¶ 41.

[8] *Id.* ¶ 37.

[9] *Id.* ¶ 45.

[10] *Id.* ¶ 47.

authorities.[11] She also claims that MMS financially profited from her being exploited for sex trafficking by renting motel rooms to her traffickers.[12]

E.B. brings claims for negligence, negligence *per se*, negligent infliction of emotional distress, and intentional infliction of emotional distress. As to the negligence *per se* claim, she avers that MMS's conduct violated Pennsylvania's Human Trafficking Law, 18 Pa. Cons. Stat. § 3001 *et seq.*, which criminalizes the recruitment, enticement, harboring or transporting of a minor for the purpose of the minor engaging in any commercial sex act.

At the time of the alleged sex trafficking incidents, MMS was covered by an insurance policy issued by Nautilus. We must decide whether Nautilus has a duty to defend and indemnify MMS in the state court action. In other words, we must determine whether any of the claims in the underlying complaint are potentially covered by the policy.

## Standard of Review

The interpretation of an insurance contract is a question of law. *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). Whether a claim is within a policy's coverage or is barred by an exclusion may be determined on a motion for judgment on the pleadings. *Allstate Fire & Cas. Ins. Co. v. Hymes*, 29 A.3d 1169, 1171 (Pa. Super. 2011). All the well-pleaded factual assertions in the underlying complaint against the insured are accepted as true. 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1368 (3d ed., Apr. 2016) (citing *Allah v. Al-Hafeez*, 226 F.3d 247, 249–50

---

[11] *Id.* ¶¶ 47, 50.

[12] *Id.* ¶¶ 48, 50.

(3d Cir. 2000)). Applying these principles, we examine the insurance policy and the allegations in the underlying state court complaint.

## Interpretation of Insurance Contracts

Where the insurer relies on a policy exclusion as the basis for denying coverage, it has the burden of proving that the exclusion applies. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009); *Wolfe v. Ross*, 115 A.3d 880, 884 (Pa. Super. 2015). Policy exclusions are strictly construed against the insurer and in favor of the insured. *QBE Ins. Corp. v. Walters*, 148 A.3d 785, 788 (Pa. Super. 2016); *see also Mut. Benefit Ins. Co. v. Politsopoulos*, 115 A.3d 844, 852 n.6 (Pa. 2015) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)); *Peters v. Nat'l Interstate Ins. Co.*, 108 A.3d 38, 43 (Pa. Super. 2014).

## Duty to Defend

An insurance carrier's duty to defend is distinct from its duty to indemnify. It is interpreted more broadly than the duty to indemnify. *QBE Ins. Corp.*, 148 A.3d at 788 (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 n.7 (Pa. 2006)). An insurer may have a duty to defend even though it may have no duty to indemnify. *Id.* (quoting *Selective Way Ins. Co. v. Hosp. Grp. Servs., Inc.*, 119 A.3d 1035, 1046 (Pa. Super. 2015) (en banc)). A duty to indemnify does not arise until the insured is found liable for a covered claim. *Id.*

Because the duty to defend is broader than the duty to indemnify, the complaint in the underlying action must be construed liberally. The factual allegations must be accepted as true, and all doubts as to coverage resolved in favor of the insured. *Id.* (citing *Donegal Mut. Ins. Co. v. Bauhammers*, 938 A.2d 286, 290 (Pa. 2007)). To

4

prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, not how the plaintiff in the underlying action frames the request for relief. *Id.* (citing *Donegal*, 938 A.2d at 291). In other words, the focus of the coverage inquiry is on the substance, not the form, of the allegations.

Whenever the complaint sets forth facts raising claims that could possibly come within the policy's coverage, the insurer's duty to defend is triggered. *Id.*; *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 931 (Pa. Super. 2004). Consequently, an insurer is obligated to defend the insured against any suit arising under the policy even if the suit is "groundless, false, or fraudulent" so long as there is a possibility of coverage. *Selective Way Ins. Co.*, 119 A.3d at 1046 (citation omitted). If a single claim in a multiple-claim complaint is potentially covered, the duty to defend attaches until the underlying plaintiff can no longer recover on a covered claim. *Frog, Switch & Mfg. Co. Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (citing *Erie Exch. v. Transam. Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)).

**Analysis**

The policy provides that Nautilus "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."[13] However, Nautilus "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."[14] The policy explains that it applies "to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is

---

[13] Mem. in Opp'n to Pl. Mot. for J. on the Pleadings & Def.'s Am. Counter-Mot. for J. on the Pleadings ("MMS Resp.") (Doc. No. 22), Ex. B, Comm. General Liability Coverage Form (Doc. No. 18-1), Section I – Coverages – Coverage A, Bodily Injury and Property Damage Liability, § 1(a), at 52.

[14] *Id.*

5

caused by an 'occurrence.' "[15] "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[16]

Nautilus argues that because the allegations of sex trafficking state a cause of action arising out of an assault, it has no duty to defend or indemnify MMS because assault and battery are explicitly excluded from coverage.[17] Under the All Assault or Battery Exclusion, the policy excludes coverage for bodily injury that is "[a]ctual or alleged assault or battery," "[r]egardless of culpability or intent of any person."[18] The exclusion states in full:

> **EXCLUSION – ALL ASSAULT OR BATTERY**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **A.** The following exclusion is added to 2. Exclusions of Section 1 – Coverage A – Bodily Injury And Property Damage Liability, Coverage B – Personal And Advertising Injury Liability, and Coverage C – Medical Payments:
>
> **Regardless of culpability or intent of any person, this insurance does not apply to "bodily injury",** "property damage", "personal and advertising injury" or medical payments **arising out of any**:
>
> 1. Actual or alleged assault or battery;
> 2. Physical altercation; or
> 3. **Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security**.

---

[15] *Id.* § 1(b)(1).

[16] *Id.* Section V – Definitions ¶ 13 at 65.

[17] Mot. for J. on the Pleadings (Doc. No. 18) at 14.

[18] Ex. B, Comm. General Liability Coverage Form, Exclusion – All Assault or Battery at 76.

> This exclusion applies regardless of whether such actual or alleged damages are caused by any:
>
> 1. Insured;
> 2. "Employee";
> 3. Patron; or
> 4. Any other person; and
>
> whether or not such damages occurred at any premises owned or occupied by any insured.
>
> **This exclusion applies to**:
>
> 1. All causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, **allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery**, or physical altercation.
> 2. Any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an assault or battery, or a physical altercation; and specifically excludes from coverage claims or "suits" for:
>     a. **Emotional distress** for loss of society, services, consortium or income; or
>     b. Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or
> 3. Any obligation to share damages with or repay someone who must pay damages because of the injury.
>
> **B**. We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any assault or battery, or physical altercation.[19]

MMS contends that because the underlying complaint avers that it was negligent in failing to intervene, prevent, or report the trafficking was a direct cause of E.B.'s injuries, the assault or battery exclusion does not apply. It argues that the complaint in the underlying action "does not sound in assault or battery, does not allege an assault

---

[19] *Id.* (emphasis added).

or battery."[20] It concedes that if the complaint does allege assault or battery, the exclusion precludes coverage. MMS is wrong.

E.B. alleges she was assaulted. She asserts she was forcibly compelled to engage in sexual acts against her will. This included her being "held at gunpoint and threatened to engage in sexual acts with multiple traffickers."[21] Among other crimes, she was trafficked, raped, sexually assaulted, and indecently assaulted.

Trafficking of a minor occurs when a person "recruits, entices, solicits, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to" involuntary sexual servitude or "knowingly benefits financially" from such activity. 18 Pa. Cons. Stat. § 3011. Sexual servitude is defined as a "sex act or performance involving a sex act for which anything of value is . . . given, promised to or received by any individual or which is performed or provided by any individual and is induced or obtained from [a] minor." 18 Pa. Cons. Stat. § 3001. An individual is subjected to involuntary servitude, including sexual servitude, through the following means: "[c]ausing or threatening to cause serious harm to any individual," "[p]hysically restraining or threatening to physically restrain another individual," "[k]idnapping or attempting to kidnap any individual," "extortion," "[d]uress, through the use or threat to use unlawful force against the person," or "[u]sing any scheme, plan or pattern intended to cause the individual to believe that, if the individual does not perform the labor, services, acts or performances, that individual or another individual will suffer serious harm or physical restraint." *Id.* § 3012. Involuntary

---

[20] MMS Resp. at 7, ECF 8. E.B. joins MMS's counter-motion for judgment on the pleadings. Resp. Joining MMS's Counter-Mot. for J. on the Pleadings (Doc. No. 21).

[21] E.B. Compl. ¶ 37.

8

servitude necessarily includes assault, which is "an intentional attempt by force to do an injury to the person of another." *See Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (citation omitted) (defining assault and battery at common law). It is apparent that E.B. alleges the elements of human trafficking, which include various forms of assault.

Rape is committed when a person engages in sexual intercourse with a victim by forcible compulsion, which includes "not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will." *Comm. v. Eckrote*, 12 A.3d 383, 387 (Pa. Super. 2010) (quoting *Comm. v. Rhodes*, 510 A.2d 1217, 1226 (Pa. 1986) and citing 18 Pa. Cons. Stat. § 3121). E.B.'s allegations clearly aver that she was raped when coerced to engage in sexual activity against her will. Rape, a sexual offense, involves assault, an offensive touching.

Her allegations further support that she was sexually assaulted because she did not consent to engage in sexual intercourse. *See* 18 Pa. Cons. Stat. § 3124.1; *Comm. v. Buffington*, 828 A.2d 1024, 1032 (Pa. 2003) (sexual assault constitutes a lesser-included offense of rape by forcible compulsion); *see also* 18 Pa. Con. Stat. §§ 3125(a), 3126(a) (crimes of aggravated indecent assault and indecent assault include threat of forcible compulsion).

A person is guilty of simple assault if he attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another; or attempts "by physical menace to put another in fear of imminent serious bodily injury." 18 Pa. Cons. Stat. § 2701(a). Being held at gunpoint is a simple assault. *Comm. v. Gruff*, 822 A.2d 773, 789 (Pa. Super. 2003) (noting that under 18 Pa. Con. Stat. § 2701(a)(3), pointing a gun

at someone constitutes a simple assault as an "attempt[] by physical menace to put another in fear of imminent serious bodily injury") (citing *Comm. v. Savage*, 418 A.2d 629 (Pa. Super. 1980)).

The comprehensive definition of "assault and battery" in the policy encompasses the claims made against MMS. It defines an insured's failure to prevent or suppress an assault or battery as an assault or battery. The exclusion explicitly applies to "any act, error, or omission relating to such an assault or battery." It also states that the policy does not cover bodily injury arising out of "[a]ny act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security." The exclusion also applies to claims brought for "emotional distress" arising out of an assault or battery. Thus, as defined by the terms of the policy, "assault and battery" includes negligent conduct on the part of the insured or its employees that directly harms another person, whether through negligent failure to prevent an assault, negligence related to an actual or threatened assault, or negligence resulting in battery.

Essentially, negligent conduct contributing to an assault and battery falls within the exclusion. *QBE Ins. Corp.*, 148 A.3d at 791. The unambiguous language of the All Assault or Battery Exclusion excludes coverage, even assuming MMS breached its duty to E.B. in negligently failing to report the sex trafficking occurring on its premises. *Id.* Therefore, claims arising from such conduct are excluded from coverage.[22]

---

[22] In its complaint, Nautilus raises several other exclusions that it contends bar coverage. Because the assault and battery exclusion comprehensively covers all conduct alleged, we do not address the applicability of these other exclusions.

**Public Policy**

Under Pennsylvania law, it is against public policy to insure against claims for intentional torts or criminal acts. *See, e.g.*, *Gene's Restaurant, Inc. v. Nationwide Ins. Co.,* 548 A.2d 246, 247 (Pa. 1988) (no duty owed where underlying complaint alleged assault and battery); *Germantown Ins. Co. v. Martin*, 595 A.2d 1172, 1175 (Pa. Super. 1991) (citing *Wilson v. Maryland Cas. Co.*, 105 A.2d 304 (Pa. 1954); and *Esmond v. Liscio*, 224 A.2d 793 (Pa. Super. 1966) (no duty based on language of the insurance contract and public policy)); *see also, e.g.*, *Travelers Prop. Cas. Co. of Am. v. Mericle*, 486 F. App'x 233, 238 (3d Cir. 2012) (noting Pennsylvania's public policy against shifting responsibility to insurers for intentional acts). As Nautilus points out, financially benefitting from human sex trafficking is criminalized under the Pennsylvania Human Trafficking Law, 18 Pa. Cons. Stat. § 3001, *et seq.* Thus, public policy precludes coverage. *Cf. Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 865–68 (Pa. 2004).

**Conclusion**

Because the claims against MMS arise from negligent conduct contributing to an assault and battery, they are excluded from coverage under the Nautilus policy. Consequently, Nautilus has no duty to defend and indemnify MMS in the underlying suit. Thus, we shall grant Nautilus's motion for judgment on the pleadings and declare that it need not defend and indemnify MMS.